UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

John Mezzalingua Associates, Inc.
(d/b/a PPC), a Delaware corporation,

    Plaintiff,

v.                                               MEMORANDUM OPINION
                                                 AND ORDER
                                               Civil No. 10-64 (MJD/JJG)

Pace Electronics, Inc.
(d/b/a Pace International)
a Minnesota corporation,

    Defendant,
and

Perfect 10 Antenna Company,
an Arkansas corporation,

    Defendant.

_____

    Sterling A. Brennan, C.J. Veverka and Robert E. Aycock, Workman Nydegger, P.C. and Michael E. Florey and David A. Gerasimow, Fish & Richardson, P.C., Counsel for Plaintiff.

    Ronald J. Schutz and Mathew J. Yang, Robins, Kaplan, Miller & Ciresi, LLP and Charles Darwin "Skip" Davidson and Robert E. Fahr, Jr. Davidson Law Firm and John R. Horvack, Jr. Carmody & Torrance LLP, Counsel for Defendants.

_____

    This matter is before the Court upon Plaintiff's Motions for a Preliminary Injunction.

1

## I. Factual Background

Plaintiff John Mezzalingua Associates, Inc., d/b/a PPC, Inc. ("PPC") has developed coaxial cable connectors that are covered by various patents. One of PPC's patents is United States Patent No. 7,118,416 (the "'416 patent") which describes a coaxial cable connector with an elastomeric band. (Declaration of Charles Eldering, Ph.D., Ex. D).) Currently, PPC's "EX®" connectors are regarded as top of the line connectors by the industry. (Declaration of Andrew White ¶ 9 (Doc. No. 57).) This connector is not covered by the '416 patent, however.

PPC asserts that two years ago, DirecTV agreed to purchase its requirements of "F" type universal coaxial cable connectors directly and exclusively from PPC. (Id. ¶ 11.) Prior to that time, Defendant Perfect 10 Antenna Company ("Perfect 10") supplied DirecTV and its installers with satellite-related products, including PPC's connectors. (Id. ¶ 10.) PPC asserts that it has recently learned that Perfect 10 has begun to sell its own "F" type universal coaxial cable connector, and a lower cost than PPC's. (White Decl. ¶ 16.) DirecTV has indicated to PPC that it is willing to take the risk of trying a lower cost connector. (Id. ¶ 15.) In response, PPC agreed to lower the price of its

connectors by one cent per unit, and to provide training services to DirecTV installers. (Id. ¶ 18.) Such price reduction results in a loss of approximately $1.35 million in revenue. (Id.) If DirecTV chooses to purchase its connectors from Perfect 10, PPC asserts that it will suffer lost profits and may have a ripple effect on PPC's ability to expand its sales of other products to DirecTV. (Id. ¶ 20.)

Defendant Pace Electronics, Inc., d/b/a Pace International ("Pace") is a reseller of DISH Network's satellite television services and a DISH Network retail partner. (Id. ¶ 24 (Doc. No. 25).) PPC is one of two suppliers that sell coaxial cable connectors to DISH Network's internal technical work force. (Id. ¶ 31.) PPC has also acquired 100% of the market share of DISH Network's outside regional service providers. (Id. ¶ 32.) PPC asserts that it recently became aware that Pace is attempting to supply DISH Network with a cheaper, infringing alternative to the PPC cable connectors that DISH Network and its installers had been utilizing. The connector being sold by Perfect 10 and Pace are identical, except for cosmetic appearance. (Declaration of Robert Chastain ¶ 9.)

PPC seeks to enjoin both Perfect 10 and Pace from selling the accused connector, as it literally infringes claim 1 of the '416 patent. PPC asserts that without preliminary injunctive relief, continued infringement of the '416 patent

by Defendants will result in irretrievable displacement of PPC's market share and substantial price position in a critical industry segment of PPC's business.

## II. Standard

To be entitled to preliminary injunctive relief pursuant to 35 U.S.C. § 283, the Court must consider the following factors: 1) whether PPC is likely to succeed on the merits of its infringement claim; 2) whether PPC is likely to suffer irreparable harm if the requested injunctive relief is not granted; 3) the balance of equities tips in favor of PPC; and 4) that an injunction is in the public interest. Titan Tire Corp. v. Case New Holland, Inc., 566 F.3d 1372, 1375-76 (Fed. Cir. 2009) (citing Winter v. Natural Res. Def. Council, Inc. ___ U.S. ___, 129 S. Ct. 365, 374 (2008)). The district court has broad discretion in deciding whether preliminary injunctive relief is warranted. Id. at 1375.

### A. The '416 Patent

PPC asserts that the '416 patent embodies a novel design for a compression connector. The unique feature of this design is an elastomeric band that is positioned inside the connector, which deforms to provide a waterproof seal when it is compressed. Claim 1 reads as follows:

1. A connector for a coaxial cable, comprising:

> a connector body;
> a fastening member for connecting said connector to an object;
> a post including a barbed portion, said post fitted at least partially inside said connector body for receiving a prepared end of said cable;
> a compression member fitted to said connector body radially outward of the barbed portion of the post; and
> a elastomeric band fitted inside a cavity formed at least in part by said compression member;
> wherein axial movement of said compression member onto said connector body causes said elastomeric band to deform and seal an outer layer of said cable to said connector to isolate an inside of said connector from environmental influences.

### B. Likelihood of Success on the Merits

To succeed on its claims of patent infringement, PPC must demonstrate that the '416 patent is valid and that it is infringed. Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed. Cir. 2001). To demonstrate a likelihood of success on the merits, PPC "must show that it will likely prove infringement, and that it will likely withstand challenges, if any, to the validity of the patent." Titan, 566 F.3d at 1376. "In assessing whether the patentee is entitled to the injunction, the court views the matter in light of the burdens and presumptions that will inhere at trial." Id.

#### 1. Infringement

The determination of patent infringement involves a two step analysis.

Transclean Corp. v. Bridgewood Serv., Inc., 290 F.3d 1364, 1370 (Fed. Cir. 2002). The Court must first determine the scope and meaning of the patent claims asserted. Id. Next, the Court compares the properly construed claims against the accused device. Id. Claim construction is a matter of law, while infringement involves questions of fact. Id.

Words in a claim are generally given their ordinary and customary meaning as to one skilled in the art at the time of the invention. Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." Id. at 1314. When the ordinary and customary meaning of claim language is not readily apparent, however, the Court must look to "those sources available to the public that show what a person of a skill in the art would have understood disputed claim language to mean." Id. (citation omitted). Such sources include the words of the claims themselves, the specification, the prosecution history and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art. Id.

6

As with the specification, the prosecution history can be used to understand the claim, but it cannot enlarge, diminish or vary the limitations in the claim. Markman v. Westview Instruments, Inc., 52 F.3d 967, 980 (Fed. Cir. 1995) (en banc) aff'd 517 U.S. 370 (1996). Similarly, extrinsic evidence cannot be used to vary or contradict the terms of the claims. Id. at 981.

It is PPC's position that the terms of claim 1 should be given their ordinary meaning without the need for specific construction by the Court. Defendants, on the other hand, assert that the following terms in claim 1 need to be construed: elastomeric band; fitted inside a cavity; an elastomeric band that deforms and seals the cable radially outward of the barbed portion of the post in the compressed state.

It is Defendants' position that "band" should not be given its ordinary meaning because this term is specifically defined in the '416 specification.

> An elastomeric band **26** is disposed within a cavity formed in part by a shoulder **34** of compression nut **16**. "Band" is used in the sense of a flat strip, i.e., the width is greater than the thickness. (The "length" would be the circumference of the band, with the width being in the radial direction.) An O-ring is not considered a band and would not work as a replacement for the band of the present invention.

(2:38-45.)

Defendants argue that PPC cannot avoid the definitions that are included in the specification. Phillips, 415 F.3d at 1316 (where the specification includes a special definition, the inventor's lexicography governs). The fact that the word band is included in quotations marks indicates an intent to define. Sinorgchem Co. v. Int'l Trade Comm'n, 511 F.3d 1132, 1136 (Fed. Cir. 2007). Use of "i.e.", for example, signals an intent to define a word, and the Court should construe the disputed term according to that definition. Edward Lifesciences LLC v. Cook, Inc., 582 F.3d 1322, 1334 (Fed. Cir. 2007). Here, the specification specifically defines "band" as a flat strip having a width greater than thickness, with width being in the radial direction. That the band must be a flat strip is further reinforced by the language in the specification which excludes an O-ring. Finally, because the specification specifically provides that the longer dimension is in the radial direction, such definition controls. See, Sinorgchem Co., 511 F.3d at 1137-38; Multiform Desiccants, Inc. v. Medzam, Ltd., 133 F.3d 1473, 1478 (Fed. Cir. 1998) (finding that where the specification defines a terms without ambiguity or incompleteness, such definition controls). Based on the above, Defendants ask the Court to adopt the following proposed construction: A strip of elastomeric material that has a width greater than its thickness, with the width being in the

8

radial direction. The strip is flat, i.e., its surfaces are smooth, even and level without protrusions. If "elastomeric band" is so construed, Defendants assert the accused connector does not infringe because that connector utilizes a band that is not flat, and whose width (radially) is not greater than length (axial).

In response, PPC argues that consistent with Figure 1 of the '416 patent, the band as claimed in claim 1 is generally in the shape of a ring, with its axial dimension greater than its radial dimension. If "band" is construed as proposed by PPC, all of the embodiments disclosed in the figures include the elastomeric band. If "band" is construed as proposed by Defendants, none of the embodiments disclosed in the figures of the '416 patent fall within the scope of any of the claims.

PPC further asserts that Defendants' proposed construction of "band" is inconsistent with the specification as a whole, and is not sufficiently definite to establish that the patentee defined band to exclude embodiments. See Renishaw PLC v. Marposs Societa' Per Azioni, 158 F.3d 1243, 1249 (Fed. Cir. 1998). PPC asserts that the language in the specification relied upon by Defendants is a drafting error: the draftsman wrote width when he should have used thickness. If thickness is substituted in, then both sentences describe a band that is shaped

9

like the band disclosed in Figure 1 and the conflict and ambiguity is resolved. PPC has also submitted an expert opinion that to the extent this drafting error creates any confusion, a person of ordinary skill in the art would have no difficulty in understanding that band would be of the type depicted in the figures of the '416 patent. (Decl. Charles Eldering, ¶ 5 dated April 16, 2010.)

Despite the opinion of Dr. Eldering, federal law provides that "[w]hen drawings and specifications conflict, then it is the language of the latter which controls." Shaffer Tool Works v. Joy Mfg. Co., 424 F. Supp. 1269, 1275 (S.D. Tex. 1976)(citing Johnson v. Riener, 302 F.2d 757, 761, 49 C.C.P.A. 1096, 1101, (1962)). Given the fact that the elastomeric band is an important feature of the '416 patent and the position of the parties as to the construction of said term, the Court is hesitant to construe this or any term of claim 1 of the '416 patent before the parties have had an adequate opportunity to present a full picture of the claimed invention and the prior art. See, Sofamor Danek Group, Inc. v. DePuy-Motech, Inc., 74 F.3d 1216, 1221 (Fed. Cir. 1996).

The Court further notes that Defendants refer to the band in the accused connector as the Nebraska ring, because in cross section, its shape resembles the state of Nebraska. Defendants argue this Nebraska ring has a dimension in the

axial direction that is significantly greater than its dimension in the radial direction, and does not have a flat, smooth, even or level surface. In fact, the Nebraska ring is similar to an O-ring; a shape that is specifically in the specification. (2:43-45.) If Defendants prevail as to claim construction regarding the term band, PPC would not be able to demonstrate a likelihood of success on the merits as to literal infringement.[1]

Because this case is in its preliminary stages, and Defendants have demonstrated that there are genuine disputes as to claim construction and literal infringement, the Court finds that PPC has not demonstrated that preliminary injunctive relief is appropriate or warranted.

### 2. Validity

An issued patent comes with a statutory presumption of validity, therefore an alleged infringer that is challenging the validity of the patent has the ultimate burden of persuasion to prove invalidity by clear and convincing evidence. Titan, 566 F.3d at 1376. When the question before the court is whether preliminary injunctive relief is appropriate, the applications of the burdens and

---

[1] Because the Court finds that PPC has not demonstrated that preliminary injunctive relief is warranted, there is no need to address the remaining arguments as to claim construction and literal infringement at this time.

presumptions are tailored to fit the preliminary nature of the relief sought. Id. at 1377. Thus, at this stage of the proceedings, where the alleged infringer has challenged the validity of the patent, the patentee has the burden to persuade the court that despite this challenge, it is likely to succeed on the merits. Id. Defendants assert that the '416 patent is invalid as anticipated pursuant to 35 U.S.C. § 102 and invalid as obvious pursuant to § 103.

"A patent is invalid for anticipation if a single prior art reference discloses each and every limitation of the claimed invention." Schering Corp. v. Geneva Pharm., Inc., 339 F.3d 1373, 1377 (Fed. Cir. 2003). Further, "[a]nticipation does not require the actual creation or reduction to practice of the prior art subject matter; anticipation requires only an enabling disclosure." Id. at 1380.

Defendants assert that Holland, U.S. Patent No. 6,425,782, teaches each and every element of claim 1 of the '416 patent if the Court does not limit the claimed invention to the lexicographic dimensions of "band." In support, Defendants have submitted two declarations from experts in the field. (Bambos Decl. ¶ 27 & Chart 2; Whittle Decl. ¶¶ 6, 39-51.)

Without providing its own expert testimony in rebuttal, PPC argues that Holland does not render the '416 patent invalid as anticipated, as Holland does

not disclose the limitation requiring that "axial movement of said compression member onto said connector body causes said elastomeric band to deform and seal an outer layer of said cable to said connector to isolate an inside of said connector from environmental influences." PPC asserts that Holland teaches a two part adapter body- the outer sleeve of 24A and the first adapter body 51 - and that axial movement of one part onto the second part is what causes the band to deform. (Figures 16 and 17 of Holland (Whittle Decl. ¶¶ 40-51).) By contrast, the '416 patent teaches the axial movement of the compression member onto the connector body that causes the band to deform.

In light of the fact that Defendants have produced two independent expert witnesses who have both opined that Holland anticipates all elements of claim 1 of the '416 patent, and PPC has not produced its own expert to rebut such opinions, PPC has not met its burden of persuading the Court that despite the challenge to the validity of the '416 patent, PPC is likely to succeed on the merits as to validity. Titan, 566 F.3d at 1377.[2]

### C. Irreparable Injury

Courts no longer presume irreparable harm from a mere showing that a

---

[2]The Court need not address the invalidity argument under § 103 at this time.

patentee is likely to succeed on the merits. Instead, the Court must look at the factual record and assess this prong independently. eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 393-94 (2006). Also, the burden to demonstrate that an injunction is warranted is heavier when the preliminary relief will substantially grant the relief that the movant would obtain after a trial on the merits. Rathmann Group v. Tanenbaum, 889 Fl2d 787, 790 (8th Cir. 1989).

"[W]ithout a clear showing of validity and infringement, a presumption of irreparable harm does not arise in a preliminary injunction proceeding." Nutrition 21 v. U.S., 930 F.2d 867, 871 (Fed. Cir. 1991). Here, PPC has not demonstrated a clear showing of either validity or infringement, thus there is no presumption of irreparable harm in this case.

In addition, PPC has not demonstrated that it will suffer irreparable harm if the requested injunction is not granted. PPC asserts that even though Pace's infringing product is not yet on DISH Network's approved list, Pace must be enjoined as Pace will likely divert PPC's sales to DISH Network's internal workforce in the event such product is placed on the approved list. Such argument is mere speculation, however, and is not sufficient to establish irreparable harm.

14

Furthermore, even if the Court were to assume that PPC would suffer from price erosion and loss of market share, such harm is not necessarily irreparable. Lost sales alone cannot establish irreparable injury. <u>Reebok Intern. Ltd. v. J. Baker, Inc.</u>, 32 F.3d 1552, 1558 (Fed. Cir. 1994). More importantly, it appears that the economic loss is readily ascertainable in this case. (<u>See</u> White Decl. ¶¶ 20, 30-32, calculating loss of revenues to a stated dollar amount.) Accordingly, the Court finds that PPC has not demonstrated that it will suffer irreparable harm if the requested injunctive relief is not granted.

The Court further finds that based on the record, the remaining factors - balance of harms and public interest - do not support the requested preliminary relief.

IT IS HEREBY ORDERED the Plaintiff's Motions for a Preliminary Injunction [Doc. Nos. 21 and 53] are DENIED.

Date: May 5, 2010

s/ Michael J. Davis
Michael J. Davis
Chief Judge
United States District Court
